**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **JAMES THOMPSON,** | ) | NO. EDCV 06-0368-MAN |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OPINION** |
| **v.** | ) | |
| | ) | **AND ORDER** |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

Plaintiff filed a complaint on April 11, 2006, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's claim for Supplemental Security Income payments ("SSI").[1] On April 28, 2006, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on December 19, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, alternatively, remanding the

---

[1]    Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007, and is substituted in place of former Commissioner Joanne B. Barnhart as the Defendant in this action. (*See* Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social Security Act, last sentence, 42 U.S.C. § 405(g).)

case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.   The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for SSI on June 12, 2001. (Administrative Record ("A.R.") 35-37.)  Plaintiff claims to have been disabled since May 30, 2001, due to depression and paranoia.  (A.R. 35, 13.)   He has past relevant work experience as a warehouse worker and loader/unloader.  (A.R. 13, 251.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 25-28, 30-33.)  On August 22, 2002, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge ("ALJ") Ellen Koldewey.  (A.R. 222-45.)  On May 29, 2003, the ALJ denied Plaintiff's SSI claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 12-15, 4-6.)

Plaintiff sought review of that decision in this Court.   On November 23, 2004, the Court reversed the Commissioner's decision and remanded the case.  (A.R. 259-77.)  Specifically, the Court found that substantial evidence did not support the ALJ's finding that Plaintiff did not have a "severe" mental impairment in the absence of substance abuse.  (A.R. 271.)  In addition, the Court directed that, "on remand, the ALJ must thoroughly and accurately state [Plaintiff's treating physicians'] records and provide specific and legitimate reasons, if

they exist, before rejecting them in favor of the opinions of Dr. Smith and Dr. Taylor, the examining psychologists." (A.R. 274-75.)

On June 23, 2005, Plaintiff, who was represented by counsel, appeared at a hearing before ALJ David Ganly, who closed the hearing for further clarification from the Appeals Council. (A.R. 308-14.) On October 14, 2005, the ALJ conducted a supplemental hearing. Plaintiff's counsel was present, but Plaintiff was not.[2] (A.R. 315-41.) On January 23, 2006, the ALJ denied Plaintiff's request for SSI.[3] (A.R. 249-52.)

### SUMMARY OF ADMINISTRATIVE DECISION

On January 23, 2006, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of May 30, 2001. (A.R. 251, 35.) The ALJ then found that Plaintiff had a severe impairment, consisting of an adjustment disorder with depressed

---

[2]    At this hearing, Plaintiff's counsel agreed to proceed with the hearing in Plaintiff's absence. (A.R. 317.)

[3]    Although the record does not contain evidence of presentment to or a decision by the Appeals Council, the parties do not raise this as an issue. This Court assumes a final decision of the Commissioner was made and undertakes judicial review of the matter through the Commissioner's waiver or otherwise. 42 U.S.C. § 405(g)-(h). *See also,* *e.g.,* Bowen v. City of New York, 476 U.S. 467, 483, 106 S. Ct. 2022 (1986)(Secretary has the discretion to waive the exhaustion requirement, but courts can waive the exhaustion requirement in cases in which "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate"; citations omitted); Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987)(exhaustion requirement may be waived by the Secretary or by the courts).

3

mood and dysthymia.[4]  (A.R. 15, 251.)  However, Plaintiff was not found to have an impairment that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)   In addition, the ALJ noted that "[Plaintiff] was not present at the hearing and his credibility was not assessed."  (*Id.*)

In support of his findings regarding Plaintiff's residual functional capacity ("RFC"), the ALJ weighed the relevant evidence.  (A.R. 250-51.)  He noted that the San Bernardino County Department of Behavioral Health records indicate "routine outpatient treatment for a depressive disorder."  (A.R. 250.)   On November 2, 2001, David Christensen, Ph.D., diagnosed Plaintiff with "schizoaffective disorder, bipolar type." (A.R. 182, 250.) On June 26, 2002, social worker Monica Brown diagnosed Plaintiff with "major depressive disorder, severe with psychotic features."[5]   (A.R. 204, 250.)   On November 4, 2002, psychological consultative examiner Clifford Taylor, Ph.D., diagnosed Plaintiff with anxiety. (A.R. 250, 216.)  No records evidence a "mental health crisis requiring inpatient hospitalization or intensive treatment."  (A.R. 250.)

---

[4]     This was in accord with the Court's initial remand, which found that "the records from Plaintiff's treating physicians at San Bernardino County and the Cedar House Rehabilitation Center demonstrate that Plaintiff's mental health problems in the absence of his substance abuse meet the *de minimis* standard for 'severity' under the Social Security regulations."  (A.R. 274.)

[5]     Brown's opinion is not accorded the weight of an "acceptable medical source." *See* 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1)(a decision regarding a claimant's medically determinable impairments should be based upon a determination made by an "acceptable medical source," such as a licensed physician).

4

1       The ALJ discussed the results of Dr. Christensen's mental status

2   examination conducted on November 2, 2002.  (A.R. 250, 175-82.)

3   Plaintiff displayed organized speech and thought processes, intact

4   memory, poor insight, and no delusions.  (A.R. 250, 180.)  He also

5   reported difficulty concentrating, and that he was paranoid around

6   people.  (A.R. 250, 180, 176.)

7

8       The ALJ then considered the testimony of medical expert Dr.

9   Perrotti.  (A.R. 250.)  Dr. Perrotti disagreed with the diagnosis of

10  schizoaffective disorder, because Plaintiff was able to maintain

11  appointments with mental health professionals and had a girlfriend.

12  (*Id.*)  Schizoaffective patients are typically withdrawn, and Plaintiff's

13  functioning was "not apparently disrupted."  (*Id.*)  The medical expert

14  further found no basis for the anxiety diagnosis, which was not

15  supported by clinical or objective findings but, rather, only by

16  Plaintiff's complaints.  (*Id.*)  Dr. Perrotti also testified that

17  Plaintiff's psychotic features -- his report that "people are talking

18  about me" -- were consistent with methamphetamine withdrawal.[6]  (*Id.*)

19  Plaintiff's then current medications were appropriate for a psychotic

20  disorder, but also for treating withdrawal symptoms.  (A.R. 250-51.)

21

22      Regarding the severity of Plaintiff's mental impairment, Dr.

23  Perrotti testified that Plaintiff "would have mild restriction in

24  activities of daily living, moderate difficulty maintaining social

25  functioning, and moderate difficulty maintaining concentration,

26  persistence, or pace."  (A.R. 251.)  He further testified that Plaintiff

27  _____

28      [6]   The administrative record documents Plaintiff's former drug
    abuse.  (*See, e.g.,* A.R. 56, 71, 84).

could "perform moderately complex tasks consisting of five steps or less.  He could not perform face-paced [sic] work or multiple tasks." (*Id.*)

The ALJ stated that Dr. Perrotti's testimony was highly probative, consistent with the objective medical evidence, and that there was no convincing reason to reject his opinion.  (A.R. 251.)  The ALJ made the following RFC assessment: "Physically, [Plaintiff's RFC] is unrestricted.  Mentally, [Plaintiff] can perform tasks consisting of five steps or less, no multitasking or fast-paced work, and no interacting with the general public."[7]  (A.R. 252.)  The ALJ further found that Plaintiff's past relevant work did not require the performance of work-related activities precluded by his RFC.  (*Id.*)  Accordingly, the ALJ found that Plaintiff is not "disabled" within the meaning of the Social Security Act.  (*Id.*)

# STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the

---

[7]  This action does not contest the physical limitation finding, and addresses only the finding regarding mental limitations.

6

1   conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

2

3       Although this Court cannot substitute its discretion for that of

4   the Commissioner, this Court nonetheless must review the record as a

5   whole, "weighing both the evidence that supports and the evidence that

6   detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of</u>

7   <u>Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*

8   <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

9   responsible for determining credibility, resolving conflicts in medical

10  testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d

11  1035,  1039-40  (9th  Cir.  1995).   This  Court  must  uphold  the

12  Commissioner's decision if it is supported by substantial evidence and

13  free from legal error, even when the record reasonably supports more

14  than one rational interpretation of the evidence. *Id.* at 1041; *see also*

15  <u>Morgan v. Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir.

16  1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

17

18                              **DISCUSSION**

19

20      Plaintiff alleges two errors.  <u>First</u>, Plaintiff contends that the

21  ALJ failed to render proper credibility findings.  <u>Second</u>, Plaintiff

22  contends  that  the  ALJ  failed  to  consider  properly  lay  witness

23  statements.  (Joint Stip. at 2.)

24

25  **A.   <u>Plaintiff's Credibility Is Not Critical To The Determination Of</u>**

26       **<u>This Claim</u>**.

27

28      An ALJ is required to make credibility findings when the claimant's

                                    7

credibility is critical to the determination of a claim.  <u>Albalos v.</u>
<u>Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Lewin v. Shweiker</u>, 654
F.2d 631, 635 (9th Cir. 1981).  Because Plaintiff's statements are
consistent with the ALJ's ultimate conclusions, his credibility is not
critical in this case, and the ALJ was not required to make credibility
findings.

    In his Daily Activities Questionnaire, Plaintiff answered the
request, "Please explain how your condition keeps you from working," by
stating, "I get nervous around people."  (A.R. 56.)  In the same
questionnaire, Plaintiff described problems with concentration, stating,
"My mind wanders," and, "I lose focus sometimes." (*Id.*)  In response to
questioning by ALJ Koldeway, Plaintiff described why he quit his most
recent job, which involved "doing filing and stuff."  (A.R. 230.)
Plaintiff stated, "I just couldn't handle like the new faces coming in,
and I got like – it's hard to explain, kind of like frustrated and
irritated."  (A.R. 231.)  The ALJ questioned Plaintiff further, as
follows:

    Q. [T]ell me why at least you can't support yourself enough to
    live independently?
    A. To go out and honestly and get a job –
    Q. Uh-huh.
    A. – and work 40 hours a week for somebody, I just haven't
    been able to bring myself to have that kind of responsibility
    without getting – I trip a lot of [sic] what people think of
    me, you know. And then I start thinking I'm not living up or
    working to their expectations and I give up.

8

(A.R. 233.)  Nowhere in his testimony does Plaintiff state that the severity of his impairment prevents him from performing substantial gainful activity.[8]  Nor do any of Plaintiff's numerous medical evaluators state that Plaintiff is unable to work.

Plaintiff's subjective complaints regarding the severity of his impairment are consistent with the ALJ's findings.  The ALJ found that Plaintiff's RFC is physically "unrestricted.  Mentally, the claimant can perform tasks consisting of five steps or less, no multitasking or fast-paced work, and no interacting with the general public."  (A.R. 252.)  This matches the substance of Plaintiff's statements.  He made no claim to physical disability.  (A.R. 1-341.)  His alleged limitations -- that he has trouble concentrating, difficulty with new people, and concern about what others think of him -- are in accord with the ALJ's finding that he is capable of uncomplicated job-tasks in a relatively static social environment, not involving interaction with the general public.

Plaintiff relies on two cases -- <u>Bunnell v. Sullivan</u>, 947 F.2d 341 (9th Cir. 1991), and <u>Lester v. Chater</u>, 81 F.3d 821 (9th Cir. 1995) -- to support his argument that a finding regarding Plaintiff's credibility was required.  In <u>Bunnell</u>, a Ninth Circuit *en banc* panel sought to clarify the standard for evaluating subjective pain testimony in Social Security disability cases.  947 F.2d at 342.  Two claims were resolved

_____

[8]  Claimant asserts in his application for SSI benefits, "I have a disability."  (A.R. 35.)  Certainly, all claimants implicitly assert that the severity of their impairment prevents them from working. Therefore, any denial of benefits could be construed as finding this implicit assertion not credible. However, specific credibility findings are required only when an ALJ rejects a claim based on claimant's articulated subjective complaints regarding the severity of an impairment. *See infra*.

9

in <u>Bunnell</u>; each involved a claimant who testified to disabling pain.
*Id.* at 342-43.[9]   In each claim, an ALJ had found that the claimant's
testimony regarding allegedly disabling pain was not supported by
medical evidence and, therefore, was not credible.  *Id.*  Rejecting this
analysis, the Ninth Circuit held that:

> [O]nce the claimant produces objective medical evidence of an
> underlying impairment, an adjudicator may not reject a
> claimant's subjective complaints based solely on a lack of
> objective medical evidence to fully corroborate the alleged
> severity of pain. . . .  Further, although an adjudicator may
> find the claimant's allegations of severity to be not
> credible, the adjudicator must specifically make findings
> which support this conclusion. . . .

> These findings, properly supported by the record, must be
> sufficiently specific to allow a reviewing court to conclude
> the adjudicator rejected the claimant's testimony on
> permissible grounds and did not "arbitrarily discredit a
> claimant's testimony regarding pain." . . .  As we have
> previously recognized, a reviewing court should not be forced
> to speculate as to the grounds for an adjudicator's rejection
> of a claimant's allegations of disabling pain. . . .

947 F.2d at 345-46 (citations omitted).

---

[9]   One claimant suffered "'back pain all day and all night,'"
which prevented her from sitting "'for prolonged periods' or being in a
'stationary position for more than 15 to 20 minutes.'"  <u>Bunnell</u>, 947
F.2d at 343.

1    Similarly, in Lester, the claimant alleged that the ALJ erred in
2    rejecting his testimony concerning his allegedly disabling pain.  81
3    F.3d at 833.  Lester testified that severe pain significantly impacted
4    his daily activities.  *Id.*  The ALJ's written decision stated, "I find
5    the claimant's testimony . . . to be exaggerated, not credible, and not
6    supported by credible medical evidence."  *Id.*  The Ninth Circuit
7    reversed, concluding that when subjective pain testimony forms the basis
8    of a benefits claim, the ALJ may reject the testimony only after
9    identifying "what testimony is not credible and what evidence undermines
10   the claimant's complaint."  *Id.* at 834.

11

12   These cases are inapposite here.  Unlike in Lester and Bunnell,
13   Plaintiff did not assert disabling pain before either of the two ALJs
14   who considered his claim.  (A.R. 222-245.)  Moreover, and critically,
15   the ALJ did not discredit Plaintiff's testimony at all.  (A.R. 249-252.)
16   In fact, in the decision now at issue, the ALJ wrote twice that "[t]he
17   claimant was not present at the hearing and his credibility was not
18   assessed."  (A.R. 250, 251.)

19

20   The ALJ described with sufficient specificity his reasons for
21   denying Plaintiff's claim, making clear that his decision was based on
22   substantial evidence in the record and was not arbitrary.  (A.R. 249-
23   51.)  The ALJ's RFC finding accommodated Plaintiff's statements
24   regarding his mental limitations.  The ALJ's ultimate conclusion that
25   Plaintiff was not disabled does not rest on an implicit adverse
26   credibility finding.  Put otherwise, disbelief of Plaintiff's testimony
27   and/or statements was not a pre-requisite for the denial of benefits.
28   Therefore, the ALJ's failure to discuss and render an express

1  credibility finding regarding Plaintiff's testimony and statements in
2  the post-remand decision was not reversible error.

3

4  **B.   Mr. Ratliff's Statements Are Cumulative, And Even If Fully**
5  **Considered, Would Not Alter A Reasonable ALJ's Ultimate Conclusion**.

6

7       Plaintiff next contends that the ALJ failed to assess properly the
8  statements made in a *Daily Activities Questionnaire* by Sean Ratliff,
9  Plaintiff's friend.  Plaintiff points to statements by Mr. Ratliff
10 describing Plaintiff as "antisocial," and commenting that he has "an
11 attention problem, and loses interest fast," and "sometimes is slow at
12 what he does and needs to be reminded."  (A.R. 62.)[10]  These statements
13 essentially repeat Plaintiff's testimony.  Plaintiff testified that he
14 had difficulty interacting with new people at his filing job.  (A.R.
15 231.)  He also described difficulty concentrating or paying attention to
16 any one task.  (*Id.*; *see also* A.R. 56.)  As discussed above, these
17 assertions do not undermine the ALJ's ultimate conclusion regarding
18 Plaintiff's RFC, for they are consistent with the limitations found by
19 the ALJ.

20

21      If there was any error in the ALJ's failure to acknowledge Mr.
22 Ratliff's statements, it was harmless, as the Court can confidently
23 conclude that no reasonable ALJ considering this case would have reached
24 a different conclusion had he or she expressly considered and addressed

25 _____

26      [10]   Plaintiff also asserts that Mr. Ratliff "wrote that her [sic]
   social activities have changed, 'Dramatically.' [A.R. 402.]" (Joint
27 Stip., p. 7).  The Court is unable to locate and assess any such
   statement.  Mr. Ratliff did not write the word "dramatically" anywhere
28 in his Daily Activities Questionnaire filled out on behalf of Plaintiff.
   (A.R. 58-63.)  Further, the record ends at page 341.

Mr. Ratliff's cumulative statements.  *See* <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1056 (9th Cir. 2006)(when an ALJ fails to discuss competent lay testimony, a reviewing court cannot find harmless error "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination").  Accordingly, the Court finds no reversible error in the ALJ's failure to address Mr. Ratliff's statements.

## CONCLUSION

For all of the foregoing reasons, the Court finds that neither reversal of the ALJ's decision nor remand is warranted.  Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 28, 2007

                                             /s/
                                    MARGARET A. NAGLE
                          UNITED STATES MAGISTRATE JUDGE